[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MARCH 18, 2008
THOMAS K. KAHN
CLERK

_____

No. 07-14366
Non-Argument Calendar

_____

D. C. Docket No. 02-00045-CR-ODE-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

KEATON LAMAR JOHNSON,
a.k.a. White Boy Keith,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(March 18, 2008)

Before HULL, MARCUS and WILSON, Circuit Judges.

PER CURIAM:

Keaton Lamar Johnson appeals his sentence of twelve months'

imprisonment, imposed after the district court revoked his supervised release, pursuant to 18 U.S.C. § 3583(e). After review, we affirm.

## I. BACKGROUND

In 2002, Johnson pled guilty to one count of conspiracy to possess with intent to distribute at least 5 kilograms of cocaine, in violation of 21 U.S.C. §§ 841(b)(1)(A)(ii), 846 (Count 1), and one count of attempting to conduct a financial transaction affecting interstate commerce involving the proceeds gained from Count 1, in violation of 18 U.S.C. § 1957(a). Johnson was sentenced to concurrent 87-month sentences on both counts, to be followed by five years of supervised release. Following a Federal Rule of Criminal Procedure 35 motion by the government for substantial assistance, Johnson's sentence was reduced to 70 months.

On March 30, 2007, Johnson was released from prison and began his term of supervised release. The conditions of Johnson's supervised release included, among other things, that Johnson would: (1) "not commit another federal, state or local crime"; (2) "not leave the judicial district without the permission of the court or the probation officer"; and (3) "answer truthfully all inquiries by the probation officer."

On July 19, 2007, Johnson's probation officer filed a petition for a warrant

alleging that Johnson had violated the terms of his supervised release. According to the petition, Johnson was arrested in Tennessee and charged with driving on a suspended license. When Johnson's probation officer questioned Johnson about this arrest, Johnson stated that he had traveled out of the district on an emergency concerning his daughter. However, this story conflicted with what Johnson told officers at the time of his arrest–that he was returning from Buffalo, New York. The petition charged Johnson with new criminal conduct, failure to answer the probation officer's questions truthfully and unauthorized travel outside the district.

At the revocation hearing, Johnson admitted the violations. During the hearing it was revealed that, when Johnson was arrested in Tennessee, he was traveling with a woman named Charmane Porter and $12,000 was found in his car.

Johnson called his fiancee, Adrai McConnell, to testify regarding the $12,000. McConnell testified that she was having financial difficulties and she and Johnson decided to sell jewelry Johnson had given her before his incarceration. McConnell and Johnson pawned some of the jewelry, but Johnson told her he would find a private buyer for the remainder. After his Tennessee arrest, Johnson told McConnell that he had sold her jewelry to a man in New York and that the Tennessee authorities had confiscated the money. McConnell opined that the money found in the car must have been the proceeds of the sale of the rest of the

jewelry.

On cross-examination, McConnell said that she did not know Charmane Porter, the woman riding in Johnson's car when he was arrested. McConnell was also unaware that Porter had submitted a claim alleging that the money belonged to her.

Before the district court, Johnson explained that he drove to New York to sell McConnell's jewelry.[1] Johnson stated that he took Porter along so she could drive. Johnson sold the jewelry for $12,000 to raise money to buy a truck so he could find work and ease his and McConnell's financial difficulties. Johnson admitted lying to the Tennessee officer who pulled him over about whose money it was because Johnson knew the money would raise a suspicion of drug proceeds. For this reason, Johnson asked Porter to claim the money as hers, which she did. Johnson also admitted lying to his probation officer because he was afraid his probation officer would think he was involved with drugs again.

The district court found that Johnson violated the conditions of supervised release. The district court stated that it was "really relying in particular on [charge] numbers 2 and 3, the failure to answer the [probation] officer's questions truthfully and also the unauthorized travel." The district court noted that Johnson's

---

[1]The record does not show any oath administered to Johnson. Johnson simply makes statements in court.

explanation of what happened did not make sense and found that Johnson was lying about what actually happened.

Although Johnson's advisory guidelines range was three to nine months' imprisonment, the government recommended a minimum of a twelve-month sentence. The district court concluded that the advisory guidelines range was not adequate and imposed a twelve-month sentence. Johnson filed this appeal.

## II. DISCUSSION

On appeal, Johnson argues that the twelve-month sentence imposed upon revocation of his supervised release was unreasonable.[2]

Upon finding by a preponderance of the evidence that a defendant violated a condition of supervised release, the district court may revoke the term of supervised release and impose a term of imprisonment after considering various factors set forth in 18 U.S.C. § 3553(a). 18 U.S.C. § 3583(e).[3] The district court

---

[2]Sentences imposed for violating a condition of supervised release are reviewed for reasonableness. United States v. Sweeting, 437 F.3d 1105, 1106-07 (11th Cir. 2006). A district court's decision to impose a sentence above the range recommended by Chapter 7 of the Sentencing Guidelines is reviewed for abuse of discretion. United States v. Brown, 224 F.3d 1237, 1239 (11th Cir. 2000). The district court's findings of fact with regard to violations of supervised release are binding unless clearly erroneous. United States v. Almand, 992 F.2d 316, 318 (11th Cir. 1993).

[3]Factors the district court considers include the nature and circumstances of the offense, the history and characteristics of the defendant, the need for adequate deterrence and protection of the public, the need to provide the defendant with education, medical care or treatment or other correctional treatment, the kinds of sentences and sentencing range, the pertinent Sentencing Commission policy statements, and the need to avoid unwarranted sentencing disparities. 18 U.S.C. § 3553(a)(1), (a)(2)(B)-(D), (a)(4)-(6).

must also consider the policy statements in Chapter 7 of the Sentencing Guidelines, one of which provides recommended, non-binding ranges of imprisonment. United States v. Silva, 443 F.3d 795, 799 (11th Cir. 2006). The sentencing court "shall state in open court the reasons for its imposition of a particular sentence, and, if the sentence . . . is outside the [guidelines] range, . . . the specific reason for the imposition of a sentence different from that described . . . ." 18 U.S.C. § 3553(c)(2).

With Grade C violations and a criminal history category of I, Johnson's recommended guidelines range under advisory Chapter 7 was three to nine months' imprisonment. See U.S.S.G. § 7B1.4(a).[4] Johnson's maximum statutory term of imprisonment upon revocation of supervised release was two years. See 18 U.S.C. § 3583(e)(3).

After reviewing the record and the briefs, we cannot say the district court abused its discretion in sentencing Johnson outside the advisory guidelines range or that the twelve-month sentence was unreasonable. Johnson admitted violating his supervised release by both leaving the district without permission and then lying to his probation officer about his reasons for doing so. Johnson, also continued to lie in court about what actually happened. Further, Johnson

---

[4]Johnson does not dispute the calculation of his advisory guidelines range of three to nine months' imprisonment.

6

committed the violations less than three months after he was released from prison. Additionally, Johnson's twelve-month sentence is well below the two-year statutory maximum and the amount of the variance (three months upward) is relatively small.

We also reject Johnson's argument that the district court imposed an above-guidelines sentence based merely on a hunch that Johnson was engaged in illegal activity. In asking for a sentence above the guidelines range, the government stressed that Johnson had never given a satisfactory explanation for traveling outside the district, having $12,000 in cash in his car or lying to both his probation officer and the Tennessee officer who arrested him. The government also emphasized that Johnson had been out of prison for only three months when he violated the conditions of his supervised release and engaged in "sketchy" conduct. The government requested that the district court impose a sentence for "a considerable period of time over and above" the guidelines range and "at least a year."

In imposing the sentence, the district court stated:

> I'm really relying in particular on [charge] numbers 2 and 3, the failure to answer the [probation] officer's questions truthfully and also the unauthorized travel.
> In addition to that, it seems to me that Mr. Johnson's explanation for what actually happened in this case just does not compute. It just does not make sense to me, and I believe that Mr.

Johnson in fact is lying still about what actually happened.

Now, the custody guideline range here is three to nine months. I agree with the government that this guidelines range is not adequate. I'm confident something fishy and illegal was going on here but I don't know what it was. So I'm going to moderate the sentence, and I will accept the government's recommendation for a one-year sentence.

Considering the record as a whole, the district court imposed a sentence above the recommended range because it found Johnson was still lying about why he was in Tennessee with $12,000, a credibility determination we will not disturb, see United States v. Copeland, 20 F.3d 412, 413 (11th Cir. 1994), and because the violations of his supervised release occurred so soon upon his release.[5] Although the district court believed Johnson was engaging in something "fishy and illegal," it did not not base the variance on that belief because the district court expressly stated that it did not know what Johnson had been doing. Instead, the district court focused on the fact that Johnson continued to lie about what actually happened.

Furthermore, the district court's concern over Johnson's continued lack of truthfulness is consistent with the Sentencing Commission's approach to violations of supervised release. The commentary to Chapter 7 instructs that the sentencing court "should sanction primarily the defendant's breach of trust, while taking into

---

[5]We reject Johnson's argument that the district court did not discredit the testimony of McConnell, his fiancee. Although the district court did not single out McConnell's testimony and explicitly reject it, the district court found unbelievable Johnson's explanation for the $12,000, which was supported largely by McConnell's testimony.

account, to a limited degree, the seriousness of the underlying violation and the criminal history of the violator." U.S.S.G. ch. 7, pt. A, introductory cmt. n.3(b). Although Johnson characterizes his violations as "technical," they go to the heart of whether the Probation Office and the district court can trust him on supervised release.

For all these reasons, we affirm Johnson's twelve-month sentence.

**AFFIRMED.**